## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

LINZEE MARIE OTT,

        Plaintiff,

v.

SYNCHRONY BANK,

        Defendant.

**Case No.:**

**COMPLAINT FOR DAMAGES,
DECLARATORY AND
INJUNCIVE RELIEF AND
DEMAND FOR JURY TRIAL**

Plaintiff Linzee Marie Ott ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 *et seq*. and Florida law against Defendant Synchrony Bank ("Synchrony").

## I.    <u>INTRODUCTION</u>

1. Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681, *et seq*., by Synchrony, and Synchrony's defamation of Plaintiff.

2. In 2023, Plaintiff was the victim of identity theft that resulted in Synchrony issuing a fraudulent credit card in Plaintiff's name without Plaintiff's knowledge or authorization. Since reporting the fraud to Synchrony, Synchrony

1

has refused to acknowledge the fraud, failed to reasonably investigate the circumstances surrounding the opening of the fraudulent account, and deliberately ignored the evidence provided by Plaintiff showing it was impossible for her to have been present in Texas when the account was opened. Synchrony has instead continued to report inaccurate information about the fraudulently opened credit card and associated debt to credit reporting agencies.

3.      Synchrony's conduct has been in blatant violation of §§ 1681s-2(a) and (b) of the FCRA.

4.      Synchrony's conduct has been willful, in conscious disregard of Plaintiff's rights under the FCRA, and consistent with its established business practices. Upon information and belief, thousands of consumer complaints have been lodged with various governmental agencies regarding Synchrony's refusal to reasonably investigate and acknowledge identity thefts and Synchrony's pursuit of invalid debts from consumers (including by filing lawsuits against individual consumers who are unable or unwilling to retain counsel and defend, resulting in default judgments in favor of Synchrony and collection efforts against innocent victims of identity theft).

## II.      **JURISDICTION AND VENUE**

5.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §1331

2

and 15 U.S.C. §1681p.

6.      Venue in the Middle District of Florida is proper pursuant to 28 U.S.C. §1391 because Synchrony regularly transacts business within this District and is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to one or more of Plaintiff's claims occurred in this District.

7.      During all times pertinent to this Complaint, Synchrony was authorized to conduct business in the State of Florida and conducted business in the State of Florida on a routine and systematic basis.

### III.   PARTIES

8.      Plaintiff is a natural person who resides in Jacksonville, Florida.

9.      Plaintiff is a "consumer" as defined by the FCRA (§1681a(c)).

10.     Synchrony is a "furnisher" as set forth in the FCRA (§1681s-2(b)) and its principal place of business is located at 170 W Election Rd, Ste 125, Draper, UT 84020.

11.     No valid contract exists between Plaintiff and Synchrony as Plaintiff did not apply for or request, and has never used, the fraudulent credit card account opened with Synchrony.

### IV.   FACTUAL ALLEGATIONS

12.     The FCRA governs the conduct of consumer reporting agencies and

furnishers of consumer debt information such as Synchrony to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

13.    As part of this process, the FCRA imposes a duty upon furnishers of credit information to reasonably investigate the facts and circumstances surrounding a disputed debt and timely correct any inaccuracies. §1681s-2(b). A furnisher's failure to reasonably investigate a disputed debt, followed by verification of the debt, is considered a willful violation of the FCRA.

14.    Plaintiff is a resident of Jacksonville, Florida.

15.    Plaintiff was one of the many victims of the Equifax Data Breach that exposed many victims' proprietary personal information to bad actors who have since sought to profit from the theft of such information. As a result, Plaintiff has a credit monitoring service.

16.    On Saturday, December 16, 2023, Plaintiff was notified by her credit monitoring service that a new credit card account had been opened for her with Synchrony. Plaintiff then notified Synchrony on the next business day, Monday, December 18, 2023, that she did not authorize the opening of the account.

17.    On December 28, 2023, Synchrony then mailed to Plaintiff its Fraud Investigation Form and asked for it to be completed and returned within 15 days.

18.    However, two business days later, by letter dated January 3, 2024 (well before the time for Plaintiff to submit the material showing the fraud), Synchrony denied Plaintiff's dispute and verified the debt. The stated reasons were that "you authorized, participated in, or benefited from the purchase" and "payments have been made by you on this account."  Both such reasons are false.

19.    Synchrony also indicated that its January 3, 2024, report on the account went to four credit bureaus: Equifax, Experian, Innovis Consumer Assistance, and TransUnion.

20.    Synchrony violated the FCRA by failing to conduct a reasonable investigation as required under §1681s-2(b) after Plaintiff first notified it of the fraudulently opened account and then verifying the debt to the credit bureaus.

21.    Plaintiff then appealed the denial of the dispute to Synchrony and submitted supporting documentation. Plaintiff also filed various reports of fraud with the FTC, the credit bureaus and law enforcement.

22.    The investigation has revealed that the credit card in question was opened at a jewelry store in Texas on or about December 14, 2023, at the time that a purchase for $12,750 was made.

23.    In response, Plaintiff has provided evidence to Synchrony demonstrating it was impossible for Plaintiff to have been in Texas when the

account was opened.

24.   After that initial denial and despite the additional information provided to it from third parties, Synchrony has continued to fail and refuse to conduct a reasonable investigation as required under §1681s-2(b) in response to each and every appeal by Plaintiff. As of the date of this Complaint, Plaintiff has disputed the debt and filed three appeals in response to Synchrony's denials, all to no help as Synchrony continues to harm Plaintiff's credit rating.

25.   Synchrony has willfully violated §1681s-2(a) and (b) by ignoring the evidence provided by Plaintiff demonstrating she was victim of identity theft and by continuing to report the debt as accurate and verified to the credit bureaus, negatively affecting Plaintiff's credit.

26.   Upon information and belief, Synchrony never performed an actual investigation into the Plaintiff's reported identity theft, did not consult law enforcement or ask for assistance when law enforcement contacted Synchrony about the situation, and even resisted cooperating with and providing information to Plaintiff and law enforcement officers investigating the identity theft.

27.   Upon information and belief, Synchrony never consulted any external sources in any investigation of Plaintiff's dispute and appeals, but instead had its employees perform only a cursory comparison each time of the information in

Synchrony's records with Plaintiff's information, and then confirm the information as "accurate" despite the obvious absurdity with this type of investigation following a data breach and identity theft. This has resulted in Synchrony repeatedly reporting inaccurate credit information about Plaintiff to the credit bureaus and disparaging Plaintiff by questioning her reported fraud in the process.

28.    Synchrony's violation of §1681s-2(b) was a direct and foreseeable consequence of its prioritizing cost-saving and debt collection over accuracy and consumer protection in complete disregard of Plaintiff's rights under the FCRA.

29.    Plaintiff followed the procedures established by the FCRA for Synchrony to stop reporting inaccurate information on Plaintiff's credit report.

30.    On multiple occasions, Plaintiff communicated to Synchrony that Plaintiff was the victim of identity theft.

31.    Additionally, Plaintiff filed reports of fraud with the police, the FTC and the credit bureaus and provided to Synchrony this information and evidence demonstrating she was not in Texas when and where the account was opened, and the jewelry purchased.

32.    Ignoring this information, Synchrony continued to verify the debt as accurate apparently because the information in its credit system "matched" Plaintiff's

personal identifying information. But Synchrony knows it is often the case that an identity thief's misuse of accurate personal identifying information for an individual for fraudulent purposes will cause such matching even when a victim never applies for a Synchrony credit card.

33.    Despite Plaintiff's telephone and letter disputes repeatedly explaining that Plaintiff was a victim of identity theft, Synchrony never wavered in its refusal to take any action to remove those accounts and information from Plaintiff's credit reports.

34.    Synchrony has continued to assert that Plaintiff "authorized, participated in, or benefited from the purchase" and has more recently claimed that "the card was activated with a phone number belonging to you and purchase(s) were made with the card."  Synchrony then refused to provide Plaintiff with this alleged phone number, which was apparently a number given at the store on December 14, 2023, by the identity thief when the card was opened to make the original purchase.

35.    As a direct result of Synchrony's refusal to remove the disputed inaccurate information, Synchrony has continued to harm Plaintiff.

36.    Due to Synchrony's refusal to comply with its obligations under the FCRA, Plaintiff filed a complaint with the Better Business Bureau ("BBB")

against Synchrony. In responding to that complaint, on April 15, 2024, Synchrony took the position that "the personal identifying information on the account verifies to you" and that "our records indicate that you successfully completed biometric recognition authentication during the application process that included uploading a selfie picture and a copy of the front and back of your driver's license." Synchrony also stated the account will no longer be reported to the credit bureaus, but that "you are still responsible for the debt and collection efforts may continue."

37.     Synchrony has refused to provide Plaintiff with the purported selfie or driver's license Synchrony used to open the account and relied on to deny Plaintiff's appeals.

38.     As a result of Synchrony's misconduct, Plaintiff was forced to obtain legal advice and counsel, for which she has incurred attorneys' fees and other expenses.

39.     Further, due to Synchrony's refusal to comply with its obligations under the FCRA, Plaintiff expended many hours disputing the inaccurate reporting with Synchrony and the involved credit reporting agencies, repeatedly, to no or little avail, and Synchrony's conduct has disrupted Plaintiff's life.

40.     As Plaintiff is employed, her non-working time is limited and particularly valuable to her. It has taken Plaintiff a substantial amount of time to

document events, secure her credit, and track down supporting documents, all of which negatively affected Plaintiff's enjoyment of her free time, and has caused Plaintiff needless and ongoing stress and anxiety. Synchrony's threats that "collection efforts may continue" is further adding to Plaintiff's stress.

41.    At all times pertinent hereto, Synchrony was acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment.

42.    At all times pertinent hereto, the unlawful conduct of Synchrony, as well as that of their representative agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in disregard for federal law and the rights of Plaintiff herein.

## COUNT I
### Violation of FCRA, 15 U.S.C. §1681s-2

43.    Plaintiff incorporates by reference paragraphs 1 through 42 of this Complaint as though fully set forth herein.

44.    Synchrony has repeatedly violated §1681s-2(a) of the FCRA by furnishing inaccurate information about Plaintiff to consumer reporting agencies that Synchrony knew or had reasonable cause to believe was inaccurate.

45.    Synchrony has also repeatedly violated §1681s-2(b) of the FCRA by furnishing verifiably inaccurate information about Plaintiff to consumer reporting

agencies after being notified by Plaintiff that the information was inaccurate.

46.     Synchrony has also repeatedly violated §1681s-2(b) of the FCRA by furnishing verifiably inaccurate information about Plaintiff to consumer reporting agencies after failing to reasonably investigate Plaintiff's disputes under the circumstances of this action. Synchrony failed (a) to reasonably and appropriately review all relevant information regarding the reported identity theft, (b) to timely and fully cooperate with investigating authorities, (c) to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the national credit bureaus, and (c) to cease furnishing inaccurate information relating to Plaintiff to the national credit bureaus.

47.     Plaintiff has reported the identity theft to Synchrony and disputed in writing the accuracy of Synchrony's credit reporting about Plaintiff on multiple separate occasions (following Synchrony's denial of each submitted dispute and subsequent reporting / re-reporting of the debt as "verified"), and, upon information and belief, Synchrony has reported inaccurate information pertaining to the associated debt and disputes to at least four national credit bureaus following each challenge, demonstrating at least 16 violations by Synchrony of the FCRA, with additional violations likely occurring.

11

48.    As a result of Synchrony's conduct, action, and inaction, Plaintiff has suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the inquiries which were the product of identity theft; and the expenditure of labor and effort disputing and trying to remove the reported debt which was the product of identity theft.

49.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by a bank.

50.    Pursuant to §1681n, Synchrony's conduct, actions, and inactions—including Synchrony's repeated reporting of the debt in question as verified without a reasonable investigation—were willful, rendering Synchrony liable for the greater of Plaintiff's actual damages or statutory damages *for each violation* of the FCRA as herein alleged, and punitive damages in an amount to be determined by the Court, plus attorneys' fees and costs.

51.     In the alternative, Synchrony was a least negligent, entitling Plaintiff to recover actual damages under §1681o, plus attorneys' fees and costs.

## COUNT II
**Defamation**

52.     Plaintiff incorporates by reference paragraphs 1 through 42 of this Complaint as though fully set forth herein.

53.     Plaintiff has verified to Synchrony that she did not apply for the credit card in question and has filed reports with law enforcement, the FTC and various credit bureaus to this effect.

54.     In response, Synchrony has (a) continued to report the debt on the disputed credit card as valid, (b) falsely claimed that Plaintiff "authorized, participated in, or benefited from the purchase" of the jewelry, (c) falsely claimed that "the card was activated with a phone number belonging to you and purchase(s) were made with the card," and (d) falsely claimed that Plaintiff "successfully completed biometric recognition authentication during the application process that included uploading a selfie picture and a copy of the front and back of your driver's license," and (e) falsely claimed that Plaintiff is "still responsible for the debt" that was the result of the identify theft.

55.     Upon information and belief, such statements have been made by Synchrony both in writing to the credit bureaus and the BBB and orally to people

in the Middle District of Florida.

56.     Such statements are understood by recipients as accusing Plaintiff of lying about the identity theft and participating in criminal misconduct in connection with obtaining over $12,000 in jewelry without paying for it. Such statements are also factually false, highly defamatory, and not privileged or justified in any manner.

57.     Such statements represent libel and slander per se under applicable law and go beyond any credit reporting contemplated by the FCRA.

58.     In fact, Synchrony has acted with complete disregard for the truth when disparaging Plaintiff and holding itself out as having performed a thorough investigation into the facts before making those statements. Such conduct demonstrates Synchrony's statements were made with malice or the willful intent to injure Plaintiff, who did not participate in any theft of jewelry as Synchrony has accused her of doing.

59.     Upon information and belief, Synchrony also has a long history and business practice of mistreating and bullying identify theft victims in this manner, further demonstrating the malicious and willful nature of its misconduct.

60.     As a result of Synchrony's defamatory statements, Plaintiff and her credit have been damaged.

## <u>COUNT III</u>
## Declaratory and Injunctive Relief

61.     Plaintiff incorporates by reference paragraphs 1 through 42 of this Complaint as though fully set forth herein.

62.     Plaintiff never opened an account with Synchrony and is not responsible for any charges or debt associated with the accounts that someone opened with Synchrony in Plaintiff's name.

63.     Synchrony has repeatedly stated otherwise, accused Plaintiff of fraudulent and criminal misconduct, stated Plaintiff is still responsible for the purported debt and threatened to continue collection efforts against Plaintiff.

64.     A real and current controversy exists between the Plaintiff and Synchrony about the validity of the purported debt, the reasonableness of the investigation performed by Synchrony into this matter, Synchrony's violations of the FCRA, and the willfulness of Synchrony's failure to comply with the FCRA.

65.     Plaintiff now seeks a declaration that:

    a.     Plaintiff was the victim of identity theft and is not responsible for any charges or debt on any accounts opened with Synchrony in her name;

    b.     Synchrony violated the FCRA by (i) failing to reasonably investigate the circumstances surrounding the opening of the

subject account in Plaintiff's name, and (ii) reporting inaccurate information to credit bureaus about Plaintiff; and

c.   Synchrony has a history of violating the FCRA by performing only cursory investigations before bullying innocent victims of identity theft with collection efforts, demonstrating the willful and malicious nature of Synchrony's conduct.

66.   Plaintiff further seeks injunctive relief prohibiting Synchrony's chronic and ongoing violations of the requirements of the FCRA when responding to complaints of identity theft victims such as Plaintiff.

## V.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief against Defendants:

a.   Declaratory judgment that Synchrony violated the FCRA, 15 U.S.C. §1681s-2 and for the relief requested herein;

b.   An award of actual, statutory, and punitive damages pursuant to 15 U.S.C. §1681n;

c.   An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. §§1681n and 1681o;

d.   An award of compensatory, presumed and punitive damages for

Synchrony's libel and slander of Plaintiff;

e. Permanent injunctive relief requiring Synchrony to change its investigation procedures and guidelines that have resulted in it abusing the rights and hurting the credit ratings of innocent victims of identity theft without performing reasonable investigations; and

f. Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory or injunctive relief.


## VI.   JURY DEMAND.

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated:  April 16, 2024

                              **BISHOP PAGE & MILLS PLLC**

                              /s/ Frederick D. Page
                              Frederick D. Page
                              Florida Bar Number 968587
                              Lead counsel for Plaintiff
                              510 N. Julia Street
                              Jacksonville, FL 32202
                              (904) 598-0034 / (904) 598-0395(f)
                              fpage@bishoppagemills.com