## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

LINZEE MARIE OTT,

      Plaintiff,

v.                                        Case No. 3:24-cv-365-MMH-MCR

SYNCHRONY BANK,

      Defendant.

_____

## **O R D E R**

**THIS CAUSE** is before the Court on Defendant Synchrony Bank's Motion to Dismiss Count II of Plaintiff's Amended Complaint and Incorporated Memorandum of Law (Doc. 19; Motion), filed on August 1, 2024. In the Motion, Synchrony seeks dismissal of the claims in Count II of Plaintiff Linzee Marie Ott's Amended Complaint for Damages, Declaratory and Injunctive Relief and Demand for Jury Trial (Doc. 11; Amended Complaint) under Rule 12(b)(6) of the Federal Rules of Civil Procedure (Rule(s)). Ott timely responded to the Motion. See Plaintiff's Response to Motion to Dismiss Count II of the Amended Complaint (Doc. 22; Response), filed on August 12, 2024. Accordingly, this matter is ripe for review.

## I.      Legal Standard

In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure (Rule(s)), the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 & n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "But where the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct," the plaintiff has failed to meet their pleading burden under Rule 8. <u>Id.</u> at 679.

The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555 (citations omitted); <u>see also</u> <u>Jackson</u>, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (quotation marks and quoted authority omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." <u>See</u> <u>Iqbal</u>, 556 U.S. at 679. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 570).

## II.   Background[1]

In her Amended Complaint, Ott alleges the following facts. Ott "was the victim of identity theft" in 2023 after a major data breach. Amended Complaint ¶¶ 2, 15. This allowed someone to open a credit card in her name with a jewelry store in Texas. Id. ¶¶ 16, 24. Synchrony was the bank that issued the card. Id. ¶ 16. Ott learned about the fraudulent account on December 16, 2023, and notified Synchrony the next business day "that she did not authorize the opening of the account." Id. Ott also notified three consumer reporting agencies (CRAs), and at least one of them notified Synchrony of Ott's dispute. Id. ¶ 17. Synchrony then sent Ott "its Fraud Investigation Form and asked for it to be completed and returned within 15 days." Id. ¶ 18. But by a letter dated six days later, in early January 2024, Synchrony "denied [Ott's] dispute and verified the debt to the CRAs." Id. ¶ 19. In that letter, Synchrony claimed that Ott "'authorized, participated in, or benefited from the purchase' and [that] 'payments ha[d] been made by [Ott] on th[e] account.'" Id. But neither statement was true. Id. Indeed, according to Ott, Synchrony "fail[ed] to conduct a

---

[1] In considering the Motion, the Court must accept all factual allegations in the Amended Complaint as true, consider the allegations in the light most favorable to Ott, and accept all reasonable inferences that can be drawn from such allegations. See Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa County, 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Amended Complaint and may well differ from those that ultimately can be proved.

reasonable investigation after [Ott] and the CRAs notified it of the disputed debt … ." Id. ¶ 20. Yet Synchrony still sent its denial letter to four CRAs. Id. ¶ 21.

"After Synchrony's first denial of [Ott's] dispute … , [Ott] appealed the denial several times to Synchrony and submitted additional supporting documentation. [Ott] also filed various additional disputes and reports of fraud with the FTC, the CRAs and law enforcement." Id. ¶ 23. At some point, Ott learned that the credit card was opened in Texas around December 14, 2023, and then "provided evidence to Synchrony demonstrating it was impossible for [her] to have been in Texas when the account was opened." Id. ¶ 24. "Following receipt of this additional information, Synchrony … continued to report the debt as verified … and also accused [Ott] of participating in and benefiting from the reported fraud." Id. ¶ 25. According to Ott, Synchrony's investigation consisted of "employees perform[ing] only a cursory comparison of the basic personal identifying information in Synchrony's records with [Ott's] real information … ." Id. ¶ 30. Indeed, in response to a complaint Ott filed with the Better Business Bureau (BBB), Synchrony "took the position that 'the personal identifying information on the account verifie[d] to [Ott]' and that '[its] records indicate[d] that [Ott] successfully completed biometric recognition authentication during the application process that included uploading a selfie

picture and a copy of the front and back of [Ott's] driver's license.'" Id. ¶ 38. "But Synchrony knows that an identity thief's misuse of accurate personal identifying information of an individual for fraudulent purposes will cause such 'matching' even when a victim never applies for a Synchrony credit card." Id. ¶ 35.

Throughout the dispute, Synchrony "did not consult law enforcement when repeatedly contacted about the situation, and … resisted cooperating with and providing information to [Ott] and law enforcement officers investigating the identity theft." Id. ¶ 29. Synchrony told Ott that "collection efforts may continue." Id. ¶ 38 (internal quotation marks omitted).

Only after Ott's original complaint was filed in April 2024 (Doc. 1; Complaint) did Synchrony "admit[ ] the debt was fraudulent and indicate[ ] it would delete the fraudulent debt from [Ott's] account and correct its reporting to the CRAs." Id. ¶ 27. Synchrony first took action to remove the debt from Ott's credit reports in "late May 2024." Id. ¶ 36. The investigation causing Synchrony to reverse course revealed that "neither [Ott's] race nor picture matched the fake driver's license provided by the perpetrator of the fraud at the time the fraudulent account was opened." Id. ¶ 27.

In the Amended Complaint, Ott asserts claims against Synchrony in three Counts. In Count I, Ott brings a claim under the Fair Credit Reporting

Act, 15 U.S.C. § 1681 <u>et</u> <u>seq.</u> (FCRA) asserting Synchrony's actions violated 15 U.S.C. § 1681s-2. <u>Id.</u> ¶¶ 45–53. In Count II, Ott brings claims for defamation. <u>Id.</u> ¶¶ 54–62. And in Count III, Ott brings claims for declaratory and injunctive relief. <u>Id.</u> ¶¶ 63–68. In the Motion, Synchrony contends that the claims in Count II should be dismissed because, absent willful misconduct, defamation claims are expressly preempted by the FCRA. <u>See generally</u> Motion. And according to Synchrony, Ott in the Amended Complaint fails to allege willful misconduct. <u>See generally</u> <u>id.</u>

### III.   Discussion

Synchrony argues that the FCRA preempts Ott's defamation claims. <u>See generally</u> Motion.[2] Although the parties' briefing lacks precision, Synchrony appears to advance two preemption theories. First, Synchrony contends that because Ott's "claim of defamation is premised on Synchrony's furnishing of records relating to" the fraudulent account, her claim is barred by 15 U.S.C. § 1681t(b)(1)(F). <u>See</u> <u>id.</u> at 6 (quoted). Second, Synchrony contends that because Ott fails to allege that Synchrony "acted with willful intent," her claim is barred by § 1681h(e). Motion at 6. Ott responds to this second argument by pointing to

---

[2] Synchrony does not contend that Ott fails to state a claim for defamation. For purposes of resolving the Motion, the Court assumes but does not decide that Ott's allegations in the Amended Complaint suffice to state claims for defamation.

particular allegations that she contends satisfy the pleading standard as to willful intent and by emphasizing the Rules' liberal pleading requirements. See Response at 2–4. Ott also contends that "dismissal of Count II in its entirety is not warranted" because the claims in Count II are "based on more than just credit reporting activity," an argument the Court concludes is directed at both of Synchrony's preemption theories. Id. at 5. For the reasons that follow, the Court concludes the Motion is due to be granted in part and denied in part. In addition, the Court orders Ott to show cause why the claims in Count III should not be dismissed for lack of subject-matter jurisdiction.

A.     The Preemptive Scope of the FCRA

Before addressing the reach of the FCRA's preemption provisions, the Court finds it helpful to describe the general framework of the FCRA and to define terms appearing throughout the statute.[3] The FCRA represents Congress's effort to balance the need to protect consumers with the need for certain entities to assess a consumer's past transactions before doing business with them. See, e.g., Thornton v. Equifax, Inc., 619 F.2d 700, 703 (8th Cir. 1980) ("[The FCRA's] provisions provide for the protection of the reputation of the consumer while recognizing the legitimacy of credit reports as a necessary

_____

[3] In the description that follows, the Court omits certain details from the FCRA's lengthy definitions when those details are not relevant to this case.

adjunct of commerce for consumer credit, personnel matters, insurance and other needed information."). As defined by the FCRA, a CRA is any entity that "regularly engages ... in the practice of assembling or evaluating consumer credit information ... for the purpose of furnishing consumer reports to third parties ... ." 15 U.S.C. § 1681a(f). A consumer report is a communication by a CRA "bearing on a consumer's credit worthiness ... which is used or expected to be used ... for the purpose of serving as a factor in establishing the consumer's eligibility for" credit, employment, or other enumerated benefits. 15 U.S.C. § 1681a(d)(1). When a business gives a consumer less-than-favorable terms of credit, employment, or another enumerated benefit due to the contents of that consumer's consumer report, the business has taken an "adverse action" against the consumer. 15 U.S.C. § 1681a(k). The FCRA imposes rights and obligations on consumers, see, e.g., 15 U.S.C. §§ 1681b(e), 1681g; on CRAs, see, e.g., 15 U.S.C. §§ 1681b, 1681g; on the parties who rely on consumer reports, see, e.g., 15 U.S.C. §§ 1681b(f), 1681m; and on the parties who provide information about consumers to CRAs (the "furnishers" of consumer information), see, e.g., 15 U.S.C. §§ 1681i, 1681s-2.

Turning to preemption, as the Eleventh Circuit has explained:

The Supremacy Clause of the United States Constitution preempts—that is, invalidates—state laws that interfere with, or are contrary to federal law. We recognize three types of federal preemption: express preemption, field preemption, and conflict

> preemption. Express preemption ... occurs when Congress displaces state law by so stating in express terms. In such a case, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.

<u>Aspen Am. Ins. Co. v. Landstar Ranger, Inc.</u>, 65 F.4th 1261, 1266 (11th Cir. 2023) (internal quotation marks, authority, and footnote omitted). As part of the FCRA's balancing of interests, the statute at § 1681t expressly preempts state-law causes of action when the conduct regulated by those causes of action is the same conduct regulated by the FCRA.[4] <u>See</u> 15 U.S.C. § 1681t(b). First relevant here is the preemption provision that benefits furnishers of information, § 1681t(b)(1)(F). That provision states, "No requirement or prohibition may be imposed under the laws of any State with respect to any subject matter regulated under ... [§ 1681s-2], relating to the responsibilities of persons who furnish information to [CRAs] ... ." <u>Id.</u> (reformatted).[5] The subject matter regulated by § 1681s-2 is broad. Among other things, § 1681s-2 requires those who furnish information to CRAs to report accurate information, to implement procedures to respond to reports of identity theft, to keep

---

[4] Through the preemption provisions and the remedy provisions in § 1681n and § 1681o, the FCRA replaces certain state-law claims with federal causes of action. These sections provide the basis for Ott's claims in Count I, which Synchrony does not challenge in the Motion.

[5] The parties appear to agree that Ott's allegations suffice to allege that Synchrony is a "person[ ] who furnish[es] information to [CRAs]." <u>See generally</u> Motion; Response.

information up to date, and to notify consumers of negative information under certain circumstances. See 15 U.S.C. § 1681s-2. Particular obligations are triggered when a consumer gives notice of a dispute. See 15 U.S.C. § 1681s-2(b). Thus, § 1681t(b)(1)(F) plainly preempts state-law claims arising from furnishers' reporting of information to CRAs. Accordingly, Ott's claims in Count II are due to be dismissed to the extent that Ott, in those claims, seeks to hold Synchrony liable for defamation based on Synchrony's statements to CRAs.

Contrary to Ott's argument in the Response, § 1681h(e) does not save her state-law claims that are based on Synchrony's communications with CRAs. A lesson in bad drafting practices, § 1681h(e) provides:

> Except as provided in sections 1681n and 1681o … , no consumer may bring any action … in the nature of defamation … with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a [CRA], based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e). Sections 1681g, 1681h, and 1681m are inapplicable to Ott's claims.[6] To rephrase § 1681h(e)'s remaining qualifications as applied to

---

[6] Sections 1681g and 1681h apply only to CRAs. See 15 U.S.C. §§ 1681g, 1681h. Section 1681m applies to users of consumer reports who take adverse action based on information in

an entity that furnishes information to CRAs, preemption applies to all defamation claims "with respect to the reporting of information" that are "based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action" unless such disclosure contained "false information furnished with malice or willful intent to injure such consumer." This liability shield is a "quid pro quo" to the furnishers for the FCRA's requirement that they "provid[e] full disclosure." See Ross v. F.D.I.C., 625 F.3d 808, 814 (4th Cir. 2010) (citing Thornton, 619 F.2d at 703).

Applying § 1681h(e) to Ott's claims that are based on Synchrony's communications with CRAs, as a preliminary matter, the Court concludes that § 1681h(e) does not apply under its terms because Ott does not allege that Synchrony's communications resulted in an "adverse action" by a user of the information Synchrony provided.[7] See, e.g., Pinckney v. SLM Fin. Corp., 433 F. Supp. 2d 1316, 1321–22 (N.D. Ga. 2005) ("Plaintiff does not allege that Defendants took an adverse action against him based on his credit reports. This

_____

the reports. See 15 U.S.C. § 1681m. Synchrony is not a CRA, and Ott does not allege that Synchrony took adverse action against her based on information contained in her credit report.

[7] Ott does include the vague allegations that she "suffered damage by loss of credit[,] loss of ability to purchase and benefit from her good credit rating … [, and] reduced overall creditworthiness … ." Amended Complaint ¶ 50. But the Court need not decide whether these allegations would satisfy the "adverse action" requirement because these allegations appear in Count I and are not incorporated by her state-law claims in Count II.

case also does not involve … a 'user' of a consumer report who has taken adverse action against a consumer based on the content of the credit report. Therefore … § 1681h(e) does not preempt Plaintiff's state law tort claims.");[8] Lofton-Taylor v. Verizon Wireless, 262 Fed. App'x. 999, 1002 (11th Cir. 2008) ("[Section 1681h(e)] means that where a company furnishes credit information about a consumer to a [CRA] pursuant to the [FCRA], the company furnishing the information is protected from state law … claims" unless the willfulness exception applies.) (emphasis added).[9] But even assuming the text of § 1681h(e) applies to claims arising from these communications, the Court concludes that the immunity provided in § 1681t(b)(1)(F) supersedes the exception in § 1681h(e).

At the outset, the Court notes that if § 1681h(e) applies to actions against a furnisher arising from nothing more than its communications with CRAs, § 1681t(b)(1)(F) appears to make § 1681h(e) superfluous to the extent that both

---

[8] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

[9] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

preempt state-law claims arising from those communications. Indeed, the task of delineating separate fields of action for these two preemption provisions (which were added to the FCRA 26 years apart, with § 1681t(b)(1)(F) being added later) has caused considerable disagreement in the courts. See Carruthers v. Am. Honda Fin. Corp., 717 F. Supp. 2d 1251, 1254–1258 (N.D. Fla. 2010) (explaining three different approaches to reconciling the apparently overlapping preemption provisions at § 1681t(b)(1)(F) and § 1681h(e)); Knudson v. Wachovia Bank, 513 F. Supp. 2d 1255, 1258–1261 (M.D. Ala. 2007) (same). One court aptly summarized the dominant approaches to interpreting the provisions as follows:

> First, some courts conclude that all state law claims are preempted under FCRA because Section 1681t(b)(1)(F) super[s]edes the older Section 1681h(e). Second, other courts hold … that Section 1681t(b)(1)(F) only applies once a furnisher of information receives notice of a dispute from a credit reporting agency. Before notice of a dispute, Section 1681h(e) applies to claims against furnishers of information. Finally, the remaining courts hold that Section 1681t(b)(1)(F) applies only to state law claims created by statute and Section 1681h(e) applies to state tort claims arising from common law.

Pinckney, 433 F. Supp. 2d at 1320–21. Yet, other courts have suggested that the willfulness and malice exception in § 1681h(e) might supersede § 1681t(b)(1)(F). See, e.g., Ross, 625 F.3d at 813–15 (describing the willfulness exception of § 1681h(e) as a source of authorization for defamation claims). No binding precedent resolves the proper interpretation of the provisions.

- 14 -

This Court is persuaded by the reasoning in <u>Carruthers</u> and adopts the "complete preemption" approach for the reasons stated there. <u>See</u> 717 F. Supp. 2d at 1255–58. As such, the Court concludes that § 1681t(b)(1)(F) renders § 1681h(e) superfluous to the extent that § 1681t(b)(1)(F) completely preempts state-law claims against information furnishers that arise out of the furnishers' reporting of information to CRAs after having been notified of a dispute.[10] As such, Ott's claims in Count II are due to be dismissed to the extent that in those claims, Ott seeks to hold Synchrony liable for defamation based on Synchrony's communications with the CRAs.

As to Synchrony's alleged communications with third parties such as the BBB and law enforcement, for the reasons that follow, the Court concludes that neither § 1681t(b)(1)(F) nor § 1681h(e) preempts Ott's defamation claims to the extent that her claims are based on these communications. <u>See</u> <u>Hood v. Dun & Bradstreet, Inc.</u>, 486 F.2d 25, 32 (5th Cir. 1973), <u>cert. denied</u>, 415 U.S. 985 (1974) ("[Section 1681h(e)] does not preclude an action at common law except where information that would give rise to a cause of action is obtained by the complainant pursuant to the provisions of the Act.") <u>accord</u> <u>Thornton</u>, 619 F.2d

---

[10] The Court need not, and does not, decide whether § 1681h(e) might operate separately in cases where a user of a credit report, in taking an adverse action against a consumer, relies on false information maliciously furnished to a CRA.

at 703.[11] Synchrony's communications with law enforcement and the BBB—neither entity being alleged to be a user, furnisher, or CRA with regards to the information at issue—are simply not regulated by the FCRA. See 15 U.S.C. § 1681 et seq.[12] Rather, they are bystanders to Ott's dispute with Synchrony. As such, there is no quid pro quo immunity for these communications. And Synchrony provides no legal authority or argument to support the contention that Synchrony's communications with unregulated third parties are protected by the FCRA. See generally Motion. Accordingly, the Motion is due to be denied to the extent that Ott's defamation claims in Count II are premised on communications with the BBB, law enforcement, and other unregulated entities.[13]

---

[11] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. But the Court also notes that the interpretation of § 1861h(e) given in Hood, a pre-Bonner Fifth Circuit decision, is dictum.

[12] Because the Court concludes that neither preemption provision applies to Ott's claims insofar as her claims are based on Synchrony's communications with entities outside the scope of FCRA regulation, the Court need not, and does not, reach the parties' arguments as to whether Ott's claims would be permitted under the malicious and willful exception.

[13] The Court notes that Ott sufficiently alleges that such communications took place. And, Synchrony does not argue otherwise. See, e.g., Amended Complaint ¶ 38 (Synchrony's response to Ott's BBB complaint); id. ¶ 57 ("Upon information and belief, Synchrony made [defamatory] statements in writing and/or orally to … the BBB, law enforcement, and others … ."); id. ¶ 56 (list of allegedly defamatory statements Synchrony made to the BBB and the CRAs); and id. ¶ 29 ("Upon information and belief, Synchrony … did not consult law enforcement when repeatedly contacted about the situation, and even resisted cooperating with and providing information to … law enforcement officers investigating the identity

B.    The Court's Subject-Matter Jurisdiction

In Count III, Ott brings claims for declaratory and injunctive relief. <u>See</u> Amended Complaint ¶¶ 63–68. Specifically, Ott seeks a declaration that Synchrony violated the FCRA with malice, and that the FCRA does not preempt state-law tort claims based on Synchrony's conduct. <u>Id.</u> ¶ 67. Ott also "seeks injunctive relief prohibiting Synchrony's chronic and ongoing willful misconduct when responding to complaints of identity theft victims such as [Ott]." <u>Id.</u> ¶ 68.

Federal courts are courts of limited jurisdiction and therefore have an obligation to inquire into their subject-matter jurisdiction. <u>See</u> <u>Kirkland v. Midland Mortg. Co.</u>, 243 F.3d 1277, 1279–80 (11th Cir. 2001). This obligation exists regardless of whether the parties have challenged the existence of subject-matter jurisdiction. <u>See</u> <u>Univ. of S. Ala. v. Am. Tobacco Co.</u>, 168 F.3d 405, 410 (11th Cir. 1999) ("[I]t is well settled that a federal court is obligated to inquire into subject matter jurisdiction <u>sua</u> <u>sponte</u> whenever it may be lacking."). In the context of declaratory relief being sought for past injuries,

---

theft."). In essence, Ott alleges that Synchrony told everyone who asked that the credit card was legitimate and that Ott opened the account with biometric identification. But unlike the CRAs and furnishers, who have statutory duties to tell Ott about Synchrony's reports, <u>see, e.g.,</u> 15 U.S.C. §§ 1681s-2(a)(7), 1681i(a)(6), unregulated parties like the BBB and law enforcement have no such duty, and accordingly, Ott cannot reasonably be expected to know the precise details of Synchrony's communications with them.

standing is jurisdictional. See Cambridge Christian Sch., Inc. v. Fla. High Sch. Athl. Assn., Inc., 115 F.4th 1266, 1296 (11th Cir. 2024) (holding that the plaintiff lacked standing to pursue declaratory relief claims and remanding "with instructions for the district court to dismiss those claims for lack of subject matter jurisdiction.").

"To establish standing, a plaintiff must have: (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Cambridge Christian, 115 F.4th at 1281 (internal quotation marks and quoted authority omitted). "[A] plaintiff has standing to seek declaratory relief only when there is a substantial likelihood that he will suffer injury in the future." Id. (internal quotation marks and quoted authority omitted); see also City of Los Angeles v. Lyons, 461 U.S. 95, 104 (1983). Indeed, declaratory relief is designed not to reach back into the past and adjudge who wronged who, but rather to help expeditiously resolve the rights of parties who remain in an ongoing relationship and thereby keep them from damaging one another as they each try to minimize their own risk. See Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir. 1985) ("A declaration that [the defendant's] past conduct violated [the plaintiff's] constitutional rights … 'would [be] nothing more than a gratuitous comment without any force or effect.'") (quoted authority omitted) (last

alteration in original). Similarly, when an injury is wholly in the past, the injury is not "likely to be redressed by" the entry of an injunction because injunctions provide prospective relief. See Cambridge Christian, 115 F.4th at 1281 (quoted).

Here, in her claims for declaratory and injunctive relief, Ott states that Synchrony's misconduct continued "[u]p until May 2024." Amended Complaint ¶ 65. May 2024 is now six months ago. Ott provides no allegations of fact suggesting that Synchrony's misconduct toward her is likely to continue in the future, and indeed, casts the controversy entirely in the past tense. See id. ¶¶ 66, 67. As such, the Court is unable to discern whether Ott has standing to pursue these claims and orders Ott to show cause why the claims in Count III should not be dismissed for lack of subject-matter jurisdiction.

Accordingly, it is

**ORDERED:**

1.  Synchrony Bank, LLC's Motion to Dismiss Count II of Plaintiff's Amended Complaint (Doc. 19) is **GRANTED IN PART** and **DENIED IN PART**.

    a.  The Motion is **GRANTED** to the extent that insofar as the claims in Count II are based on Synchrony's communications with credit reporting agencies, those claims are **dismissed with prejudice**.

       b.      The Motion is **DENIED** in all other respects.

2.      Linzee Ott is **ORDERED** to **show cause** on or before **November 20, 2024**, why the claims in Count III should not be dismissed for lack of subject-matter jurisdiction.

3.      Synchrony must answer the Amended Complaint in accordance with Rule 12.[14]

**DONE AND ORDERED** in Jacksonville, Florida this 6th day of November, 2024.


**MARCIA MORALES HOWARD**
United States District Judge


lc33

Copies to:
Counsel of Record

---

[14] Synchrony "requests that the time for it to respond to the remaining counts of the Amended Complaint be extended until after this Court's entry of an order on this Motion." Motion at 4–5 n.1. The Court directs Synchrony to Rule 12(a)(4)(A) and notes that the fact Synchrony filed a partial motion to dismiss does not affect the operation of the Rule.